NOT FOR PUBLICATION

RECEIVED
SEP 20 2017
AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ZUHDI KARAGJOZI,

    Plaintiff,

v.

DAVID BRUCK, ESQ. and GREENBAUM, ROWE, SMITH, RAVIN, DAVIS & HIMMEL, LLP now known as GREENBAUM, ROWE, SMITH & DAVIS, LLP

    Defendants.

Civ. No. 17-6305

**AMENDED OPINION**

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court on a motion to withdraw reference brought by Plaintiff Zuhdi Karagjozi ("Plaintiff"). (ECF No. 1.) Defendants David Bruck, Esq. and Greenbaum, Rowe, Smith & Davis, LLP ("Defendants") oppose. (ECF No. 2-1.) The Court has decided the Motion after considering the parties' written submissions without oral argument pursuant to Local Civil Rule 78.1(b). For the following reasons, Plaintiff's Motion is denied.

## BACKGROUND

Plaintiff's claims stem from allegations that Defendants engaged in professional negligence and fraud during their alleged representation of him leading up to a 2006 bankruptcy proceeding for his business, *In re Kara Homes, et al.* Plaintiff was the president, sole owner, and sole director of Kara Homes, Inc., a privately owned residential real estate developer. (Pl.'s Br. at 3, ECF No. 1; Defs.' Br., Ex. B at 3, 6, ECF No. 2-2.) Plaintiff contends that Defendants

1

agreed to represent him personally while he considered whether to file for bankruptcy on behalf of his business. (Pl.'s Br. at 3.) Defendants dispute this, asserting that Defendants only agreed to represent Kara Homes, Inc. in the bankruptcy proceeding and never represented Plaintiff personally. (Defs.' Br., Ex. B at 3–4.)

The bankruptcy proceeding began in October 2006, and the Bankruptcy Court confirmed the Debtors' Plan of Reorganization and Disclosure Statement by September 2007. (*Id.* at 4). Five years later, in January 2012, Plaintiff filed his Complaint and Jury Demand in the instant malpractice case in the Superior Court of New Jersey, Essex County. (*Id.* at 4; Pl.'s Br. at 2.) On February 27, 2012, Defendants filed a Notice of Removal to the Bankruptcy Court. (Pl.'s Br. at 2; Defs.' Br., Ex. B at 4.) On March 28, 2012, Plaintiff filed a Motion to Remand the case to state court, which Defendants opposed on April 16, 2012. (Pl.'s Br. at 2; Defs.' Br., Ex. B at 4.)

On April 23, 2012, the Bankruptcy Court (Hon. Raymond T. Lyons, Jr., U.S.B.J.) denied Plaintiff's Motion to Remand. (Pl.'s Br. at 2; Defs.' Br., Ex. B at 5.) On May 7, 2012, Plaintiff filed a Motion to Amend the Complaint and for reconsideration of the order denying Plaintiff's Motion to Remand. (Pl.'s Br. at 2; Defs.' Br., Ex. B at 5.) Following oral argument on July 2, 2012, Judge Lyons granted Plaintiff's Motion to Amend the Complaint and for reconsideration; based on the Amended Complaint filed that day, which limited allegations to a six-week period before the bankruptcy action was initiated. (Pl.'s Br. at 2; Defs.' Br., Ex. B at 5.) Judge Lyons remanded the case to State Court, finding that the Bankruptcy Court lacked jurisdiction over the claims as amended. The parties then entered discovery. (Pl.'s Br. at 3.)

On July 29, 2013, the State Court entered an order bifurcating this case into two phases with distinct questions: first, the existence of an attorney-client relationship between Plaintiff and Defendants, and second, the merits of the malpractice claims and other remaining issues like

2

causation and damages. (Pl.'s Br. at 3; Defs.' Br., Ex. B at 5.) Discovery and pre-trial motions continued over the next three years on the first question. (Pl.'s Br. at 3; Defs.' Br., Ex. B at 5.) The trial was set for Monday, September 19, 2016. (Pl.'s Br. at 3; Defs.' Br., Ex. B at 5.)

On Friday, September 16, 2016, Plaintiff served Defendants with his trial brief. (Pl.'s Br. at 4; Defs.' Br., Ex. B at 5.) Defendants contend that Plaintiff included specific arguments about Defendants' conduct during the Kara Homes bankruptcy proceeding in his trial brief, even though Judge Lyons agreed to grant the summer 2012 remand on the basis of the Amended Complaint, which divested the Bankruptcy Court of jurisdiction by omitting those allegations. (Defs.' Br., Ex. B at 5; Defs.' Br. at 2–4.) Plaintiff contends that Defendants had long known Plaintiff would raise these claims at trial, and indeed had unsuccessfully opposed the admission of evidence which was the basis for the arguments since 2015 in State Court. (Pl.'s Br. at 4–5.)

As the parties argued motions before the State Court on this matter, on October 11, 2016, Defendants filed a Notice of Removal to the Bankruptcy Court, and an Amended Notice of Removal within days thereafter. (Pl.'s Br. at 4–5; Defs.' Br., Ex. B at 5.) Plaintiff filed a Motion to Remand on October 24, 2016. (Pl.'s Br. at 5; Defs.' Br., Ex. B at 6.) On November 4, 2016, Defendants filed a cross-motion for reconsideration of Judge Lyons' July 2012 order, which had remanded the case to State Court. (Pl.'s Br. at 5; Defs.' Br., Ex. B at 6.) Plaintiff opposed on November 28, 2016. (Pl.'s Br. at 5; Defs.' Br., Ex. B at 6.) The Motions were argued before the Bankruptcy Court (Hon. Michael B. Kaplan, U.S.B.J.) on December 6, 2016.

On December 14, 2016, Judge Kaplan denied Plaintiff's Motion to Remand and granted Defendants' motion for reconsideration of Judge Lyons' 2012 remand order.[1] Judge Kaplan determined that, since Plaintiff's arguments in the trial brief extended into Defendants' conduct

---

[1] Judge Kaplan read his December 14, 2016 decision into the record. The Transcript of that decision was transmitted to this Court on August 22, 2017. It is cited throughout as "Tr."

3

during the bankruptcy proceeding, the legal malpractice claims were part of a "core" proceeding and the Bankruptcy Court could exercise "arising in" jurisdiction over the claims. (Pl.'s Br. at 5; Defs.' Br., Ex. B at 6; Tr. at 17–22.)

On December 28, 2016, Plaintiff filed this Motion to Withdraw Reference with the Bankruptcy Court. (Defs.' Br., Ex. C.) However, on January 1, 2017, Plaintiff filed a Motion for Leave to Appeal Judge Kaplan's decision (*id.*), docketed by the District Court on January 6, 2017 (docket number 3:17-CV-00063) and assigned to the Hon. Michael A. Shipp, U.S.D.J. The Motion to Withdraw Reference remained pending in the Bankruptcy Court for eight months without being assigned to a district judge. Judge Shipp entered an Opinion and Order denying Plaintiff's Motion for Leave to Appeal on August 16, 2017. This Court was then assigned Plaintiff's Motion to Withdraw Reference on August 21, 2017. (ECF No. 1.)

## LEGAL STANDARD

District courts have original, though not exclusive, jurisdiction over all bankruptcy cases. 28 U.S.C. § 1334. In their discretion, district courts may "either hear these cases or refer them, in whole or part, to the bankruptcy judges for the district." *In re Dwek*, 2010 WL 2545174, at *2 (D.N.J. June 18, 2010) (citing 28 U.S.C. § 157(a)). In this District, all bankruptcy cases are referred to the Bankruptcy Court pursuant to a standing order. *See id.* (citing *Kohn v. Haymount Ltd. P'ship, LP*, 2006 WL 2417297, at *3–4 (D.N.J. Aug. 21, 2006)); U.S.D.C. for the District of N.J., Standing Order of Reference 12–1 (Sept. 18, 2012). "[T]he district court's authority to withdraw the reference is governed by 28 U.S.C. § 157, which provides for mandatory and permissive withdrawal." *In re G-I Holdings, Inc.*, 295 B.R. 211, 215 (D.N.J. 2003).

Withdrawal is mandatory when the district court determines that resolution of the proceeding requires considering both title 11 and other federal laws. *Id.* at 216; 28 U.S.C. §

157(d). In contrast, permissive withdrawal is only appropriate "for cause shown." 28 U.S.C. § 157(d); *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990) ("[T]he statute requires in clear terms that cause be shown before the reference can be withdrawn."). Although "cause" is undefined in the statute, courts in the Third Circuit "have articulated a number of factors for the District Court to consider: [w]hether the proceeding is core or non-core, judicial efficiency, uniformity and economy, and discouraging forum shopping." *In re G-I Holdings, Inc.*, 295 B.R. at 216 (citing *In re Pruitt*, 910 F.2d at 1168). "The threshold factor is whether the proceeding subject to the withdrawal request is 'core' or 'non-core' to the bankruptcy action." *In re Kara Homes, Inc.*, 2009 WL 2223035, at *1 (D.N.J. July 22, 2009).[2] Although not dispositive, traditionally the "core" designation weighs heavily against withdrawing the reference due to the bankruptcy court's expertise in "core" bankruptcy matters. "[T]he bankruptcy judge, not the district court, determines whether a proceeding is core or non-core." *Id.* at *1 (citing 28 U.S.C. § 157(b)(3)); *see also Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2172 (2014).

## ANALYSIS

Plaintiff does not argue, and the Court does not find, that resolution of this malpractice claim governed by New Jersey state tort law would require consideration of any federal laws besides those in title 11. (*See* Defs.' Br. at 8.) Accordingly, there is no basis for mandatory withdrawal here. Turning to permissive withdrawal, the Court notes that the Bankruptcy Court has already determined this is a "core" matter because Plaintiff's claims "arise in" a bankruptcy proceeding. (Tr. at 22:1–3.) Specifically, the Bankruptcy Court determined that this core matter "falls within the *Stern* type of core claims – *Stern v. Marshall* type of claims for which [the

---

[2] The Court notes that this opinion dealt with matters in the underlying bankruptcy of Kara Homes, Inc.

5

Bankruptcy] Court cannot enter a final judgment." (Tr. at 22:5–7.) *See Stern v. Marshall*, 564 U.S. 462, 503 (2011); *see also Exec. Benefits Ins. Agency*, 134 S. Ct. at 2168.[3]

In *Stern*, the Supreme Court held that bankruptcy courts lack "the constitutional authority to enter a final judgment on a state law counterclaim that [was] not resolved in the process of ruling on a creditor's proof of claim." *Stern*, 546 U.S. at 503; *see also In re One2One Commc'ns, LLC*, 805 F.3d 428, 433 (3d Cir. 2015) ("[T]he Court in *Stern* made clear that non-Article III bankruptcy judges do not have the constitutional authority to adjudicate a claim that is exclusively based upon a legal right grounded in state law . . . ."). If the Bankruptcy Court is correct that Plaintiff's claims are *Stern* claims, "judicial economy would be served if this Court were to withdraw the reference of this matter from the Bankruptcy Court, since this Court will ultimately review the Bankruptcy Court's proposed findings of fact and conclusions of law." *In re E. W. Trade Partners, Inc.*, 2007 WL 1213393, at *4 (D.N.J. Apr. 23, 2007).

Defendants spend most of their brief contesting the *Stern* designation.[4] (Defs.' Br. at 9–17.) Defendants argue that a *Stern* claim is not so-categorized solely because of its basis in state law but additionally its total independence from the bankruptcy proceeding. (Defs.' Br. at 10–11). The Court agrees. *See In re New Century TRS Holdings, Inc.*, 544 F. App'x 70, 73 (3d Cir. 2013) ("*Stern* involved a state-law counterclaim asserted by the debtor that was not related to the creditor's claims against the estate *or the underlying bankruptcy in any way*." (emphasis added)); *see also In re Red Rock Servs., Co., LLC*, 642 F. App'x 110, 114 (3d Cir. 2016).

Defendants marshal precedent from the Third Circuit and other courts to argue that the state law malpractice claims here are not *Stern* claims because they derive from the bankruptcy

---

[3] A bankruptcy court may render final judgments on *Stern* claims if the parties so consent. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1949 (2015). Here, however, Plaintiff does not consent. (Pl.'s Br. at 6.)
[4] Plaintiffs merely recite, but do not defend, Judge Kaplan's characterization. (Pl.'s Br. at 7.)

6

itself. (Defs.' Br. at 9–17.) This Court agrees that state law claims which are "inextricably interlinked with the claims flowing . . . from the federal bankruptcy statutory regime" are not *Stern* claims. *In re Red Rock Servs., Co., LLC*, 642 F. App'x at 114. Therefore, the Bankruptcy Court has authority to issue final judgments on claims stemming from issues necessarily decided by the Bankruptcy Court in the bankruptcy proceeding. *See, e.g., In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 423–24 (3d Cir. 2013) (holding that a dispute over whether an anti-assignment clause survived a settlement agreement which the bankruptcy court had confirmed was not a *Stern* claim); *In re New Century TRS Holdings, Inc.*, 544 F. App'x at 73–74 (holding that borrower's claim that she was fraudulently induced to enter a settlement agreement in bankruptcy court mortgage fraud adversary proceeding was not a *Stern* claim); *In re Yellowstone Mountain Club, LLC*, 841 F.3d 1090, 1097 (9th Cir. 2016) (holding that legal malpractice suit against a bankruptcy court officer for actions undertaken in his official capacity was not a *Stern* claim because it necessarily stemmed from the bankruptcy itself); *In re Frazin*, 732 F.3d 313, 323–24 (5th Cir. 2013) (holding that debtor's malpractice counterclaim against his attorneys was not a *Stern* claim because the bankruptcy court had to make related legal determinations on the attorneys' fee claims, but debtor's Deceptive Trade Practices Act counterclaim was a *Stern* claim because legal conclusions on that claim exceeded the scope of the bankruptcy proceeding).

To the extent that Plaintiff's malpractice claims relate to court-approved attorneys engaging in court-sanctioned conduct during the bankruptcy proceeding, they are derived from the bankruptcy and fall outside of *Stern*. Plaintiff's September 16, 2016 trial brief included arguments that Defendants had an impermissible conflict of interest in representing Plaintiff and his company simultaneously during the bankruptcy and that Defendants manipulated the bankruptcy proceedings by removing Plaintiff as an officer and director of his company. (Tr. at

15:2–17:21; *see also* Defs.' Br. at 2–4.) These state law malpractice claims are "inextricably interlinked" with the bankruptcy process, since the Bankruptcy Court has a robust role in overseeing attorneys.[5] *In re Red Rock Servs., Co., LLC*, 642 F. App'x at 114. These claims are thus non-*Stern* core matters in which the Bankruptcy Court can render final judgments. This fact weighs heavily against withdrawing the reference.

Another relevant factor is that any future jury trial will occur in this Court. Plaintiff makes evident he "does not consent to the bankruptcy court hearing this case." (Pl.'s Br. at 6.) Defendants concede that "[t]he Bankruptcy Court's jurisdiction, however, does not extend to jury trials, absent consent of the parties. . . . Thus, the District Court will preside over any jury trial; the Bankruptcy Court will address pretrial matters, including motion practice." (Defs.' Br. at 7.) Therefore, if this Court does not withdraw the reference, the Bankruptcy Court's authority will only extend to pre-trial matters, unless Plaintiff later consents to a jury trial there. In view of judicial efficiency and economy, this weighs in favor of withdrawing the reference.

However, Plaintiff's conduct evidences forum shopping, weighing against withdrawal of the reference. Upon receiving Judge Kaplan's December 2016 decision Plaintiff moved to appeal in order to effectuate a remand to state court, or, in the alternative, to withdraw the reference from the Bankruptcy Court so the matter would proceed in the District Court, not so subtly concealing his "anywhere but here" approach. (*See* Defs.' Br. at 7 ("[H]e doesn't want to be here, he wants to be somewhere else." (quoting Judge Lyons' July 2012 remand order)).) As Judge Kaplan noted, "the matter could have proceeded to trial in the State Court to the extent the claims were limited in the fashion Judge Lyons ha[d] initially sought." (Tr. at 24:22–25.) Since it

---

[5] In determining that these claims were "core" matters, Judge Kaplan detailed the Bankruptcy Court's substantial oversight of counsel and extensive involvement in sanctioning decisions made by Defendants during the bankruptcy proceeding. *See* Tr. at 18:20–25, 19:1–6.

8

was within Plaintiff's control to maintain the action in State Court, Plaintiff should not now be permitted to seek what is in his estimation a more favorable forum after failing to comply with the clear limitations Judge Lyons set out more than four years ago. (*See* Defs.' Br. at 7.)

On balance, the permissive withdrawal factors weigh against withdrawing the reference. Although judicial economy and uniformity may not be served by maintaining the action in the Bankruptcy Court solely for pre-trial motions when the ultimate trial will happen before this Court, Plaintiff's forum shopping and the fact that this is a core bankruptcy matter militate against withdrawal. The Bankruptcy Court has substantial history with the underlying bankruptcy action in which Plaintiff's claims arise and significant interest in evaluating claims that relate to the integrity of the bankruptcy process. This is particularly persuasive because Plaintiff enlarged the scope of the claims to include the bankruptcy period, creating new pre-trial matters. The Court declines to withdraw the reference.

## CONCLUSION

For the reasons stated herein, Plaintiff's Motion is denied, and the matter shall proceed in Bankruptcy Court. An appropriate order will follow.

Date: Sept 19, 2017

/s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.